UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MASSACHUSETTS BAY INSURANCE
COMPANY, a Massachusetts corporation,

       Plaintiff,                           Case No.  2:17-cv-
                                              Hon.

-vs-

THE CINCINNATI INSURANCE COMPANY,

       Defendant.

---

**HOWARD & HOWARD ATTORNEYS PLLC**
**By:   Robert E. Graziani (P25547)**
       **Michael J. Sheehan (P58585)**
Attorneys for Plaintiff
450 West Fourth Street
Royal Oak, Michigan 48067
(248) 645-1483
reg@h2law.com
mjs@h2law.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Massachusetts Bay Insurance Company ("Plaintiff" or "Hanover"), by and through its counsel, Howard & Howard Attorneys PLLC states for its Complaint against The Cincinnati Insurance Company ("Defendant") as follows:

### PARTIES AND JURISDICTION

1.    Plaintiff is a corporation incorporated under the laws of the State of Massachusetts with its principal office located in Massachusetts.

2.      Defendant is a corporation incorporated under the laws of Ohio with its principal place of business located in Ohio.   Defendant's insured Mondrian Holdings, LLC and/or Mondrian Properties, LLC are Michigan limited liability companies with their principal places of business in Michigan.

3.      Defendant regularly, systematically, and continuously conducts business in the State of Michigan, including Wayne and Oakland Counties.   In addition, this controversy arises from a policy of insurance issued by the Defendant to a Michigan limited liability company that provides coverage for an incident occurring in Michigan.  This Court therefore has both limited and general personal jurisdiction over the Defendant.

4.      There is complete diversity between the Plaintiff and the Defendant in this case.

5.      The amount in controversy in this case exceeds $75,000.

6.      This Honorable Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. §1332.

7.      Venue is properly laid in this Court.

## **GENERAL ALLEGATIONS**

8.      Plaintiff incorporates all preceding paragraphs as if each were set forth fully herein.

9.      By this action, Plaintiff seeks equitable subrogation from the Defendant of the costs to defend and ultimately settle a personal injury action asserted against a company that was insured by both Plaintiff and Defendant concurrently.

10.      Mondrian Holdings, LLC or its affiliate Mondrian Properties, LLC ("Mondrian") was the general contractor on a residential home construction (the "Project") occurring in Troy, Michigan in 2013.

11.      Mondrian entered into a subcontract with Solid Surfaces Unlimited, Inc. ("Solid Surfaces") to work on the Project.

12.      Solid Surfaces, in turn, subcontracted with Ledford Contracting to assist with installing countertops in connection with the Project.

13.      Ledford Contracting's owner, Kerry Ledford, was carrying a "backsplash" into the home for installation.  In order to get into the home, Ledford utilized two-riser wooden steps to pass from the garage through a doorway and into the home.

14.      The steps were installed exclusively by Mondrian employees.

15.      Ledford alleged that as he was using the temporary steps, the steps became detached from the wall, upending, and causing him to fall.

16.      Ledford alleged that he sustained significant injuries as a result of this fall.

3

17.    Ledford filed a lawsuit against Mondrian in the Oakland County Circuit Court where the case was assigned case number 14-142921-NO and assigned to the Hon. Shalina Kumar (the "Underlying Lawsuit").

18.    In the Underlying Lawsuit, Ledford alleged, inter alia, that Mondrian had failed to maintain the work space in a safe condition, negligently failing to properly build or install the temporary steps, and negligently caused the steps to become loose and insecure.

19.    Ledford did not name Solid Surfaces as a defendant in the Underlying Lawsuit, and made no allegations of negligence against any other party except Mondrian.

20.    As part of its subcontract with Mondrian, Solid Surfaces agreed to arrange for its liability insurance policy to reflect Mondrian as an "additional insured" under certain circumstances.

21.    Plaintiff issued a policy of commercial general liability insurance to Solid Surfaces with a policy number of ZDB-8699818 11 (the "Policy") covering the period from May 1, 2013 through May 1, 2014.[1]

22.    The Policy includes an "additional insured" provision that provides that "any person or organization with whom you agreed, because of a written

---

[1] Copies of both the Policy and the Cincinnati Policy (defined below) are in the possession of Defendant.

contract, written agreement or permit to provide insurance, is an insured, but only with respect to "your work" for the additional insured(s)..."

23.     After Mondrian was named as a defendant in the Underlying Lawsuit, it tendered its defense in that action to Plaintiff, asserting that Mondrian was an additional insured under the Policy.

24.     Because there was a possibility that Mondrian could be an "additional insured" under the Policy, and in a good faith effort to avoid any prejudice to Mondrian, Plaintiff agreed to defend Mondrian in the Underlying Lawsuit as an additional insured—but only with a reservation of rights and subject to the provisions of the Policy.

25.     Mondrian was covered under a policy issued by Defendant, policy number ENP 021 05 33, covering a policy period from September 19, 2013 through September 19, 2016 (the "Cincinnati Policy").

26.     Therefore, when Plaintiff, in good faith, agreed to defend Mondrian in the Underlying Lawsuit, Plaintiff also requested that Mondrian's own liability insurance carrier, the Defendant, participate in the defense of Mondrian in the Underlying Action.   Plaintiff based this request on the fact that the Cincinnati Policy clearly provided coverage to Mondrian for the events alleged in the Underlying Action.

27.     Despite having a clear duty to defend Mondrian, Cincinnati refused to do so, and refused even to participate or contribute to Mondrian's defense.

28.     In the course of defending Mondrian, Plaintiff came to be aware of an early opportunity to settle the allegations against Mondrian on favorable terms, and therefore avoid future defense costs and the risk of an adverse result at trial. In a good faith effort to minimize the risk faced by a potential insured, Plaintiff settled the claims against Mondrian in the Underlying Action for a settlement payment of $$230,000 in or about October, 2015.

29.     Despite the fact that Mondrian was its named insured, and despite the fact that the Cincinnati Policy clearly provides coverage to Mondrian, Cincinnati refused to participate in settlement negotiations, and refused to contribute or reimburse Plaintiff for the cost of defending and settling the claims against Mondrian.

30.     In the course of the defense of the Underlying Lawsuit, factual discovery developed information showing that Mondrian (through its employees and agents) was solely negligent for accident and injuries alleged in the Underlying Lawsuit. Mondrian's own employee Rich Remmert, testified that it was Mondrian's project superintendent who installed the temporary steps.

31.     As noted above, Plaintiff's Policy only made Mondrian an additional insured with respect to Solid Surfaces' work. Since the losses alleged in the

Underlying Lawsuit were due to the sole negligence of Mondrian, and not with respect to work performed by Solid Surfaces, Mondrian was not an "additional insured" under the Policy. To the contrary, the Policy provides that Mondrian is an additional insured only with respect to work performed by Solid Surfaces.

32.   Since the liability alleged in the Underlying Action arose from Mondrian's sole negligence, the only actual coverage available to Mondrian was coverage under the Cincinnati Policy.

33.   Cincinnati should have both defended Mondrian in the Underlying Action and paid up to policy limits to settle the claims against Mondrian.

34.   Since October, 2015, Plaintiff has requested equitable reimbursement from Defendant for the cost and expense of defending and then settling the Underlying Lawsuit.

35.   Initially, these requests came in the form of email exchanges between Plaintiff's Litigation Specialist Anne Fries and Defendant's representative Christina Pawloski. Ms. Pawloski asked for supporting documentation, including copies of certain pleadings and discovery materials (including deposition transcripts), in order to consider the question of whether Defendant would voluntarily contribute to or fund the cost of settling and defending the Underlying Lawsuit.

36.     However, even after such written materials were provided, Defendant refused to take a position on the issue, and instead simply stalled for more time.

37.     To this date, Defendant has chosen not to respond to Plaintiff's requests in any meaningful fashion, thus necessitating the filing of this action.

## COUNT I –EQUITABLE SUBROGATION

38.     Plaintiff incorporates all preceding paragraphs as if each were set forth fully herein.

39.     Defendant issued to Mondrian a policy or policies of insurance, including without limitation the aforementioned Cincinnati Policy, which provided insurance coverage for the losses alleged in the Underlying Lawsuit.

40.     Pursuant to such policies, Defendant owed an obligation to defend or pay for the defense of Mondrian in the Underlying Action.

41.     Pursuant to such policies, Defendant owed an obligation to indemnify Mondrian for losses incurred in connection with the Underlying Litigation, and to undertake reasonable efforts to settle the Underlying Lawsuit within policy limits.

42.     Defendant did not participate in the defense or settlement of the Underlying Lawsuit.

43.     In order to ensure that its potential insured was not exposed to prejudice or a default judgment in the Underlying Action, Plaintiff in good faith defended Mondrian in Cincinnati's absence.

44.    Plaintiff paid a settlement payment of $230,000 to settle the Underlying Lawsuit.  Plaintiff also incurred attorney fees and costs in defending Mondrian in the Underlying Lawsuit.

45.    The common law as well as the terms of the Policy and the Cincinnati Policy legally require Defendant to reimburse Plaintiff for the costs of settling and defending Mondrian in the Underlying Lawsuit.

46.    To date, Defendant has refused to reimburse or contribute in any way to the cost of defending and settling the Underlying Lawsuit.

47.    Pursuant to the doctrine of equitable subrogation, Plaintiff is entitled to reimbursement from Defendant for the cost of defending and settling the Underlying Litigation.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court issue Judgment in favor of Plaintiff and against Defendant in an amount that represents the cost of defending and settling the claims against Mondrian in the Underlying Lawsuit, together with such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff Massachusetts Bay Insurance Company ("Plaintiff" or "Hanover"), by and through its counsel, Howard & Howard Attorneys PLLC, hereby demands trial by jury on all issues so triable.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: */s/ Michael J. Sheehan*
   Robert E. Graziani (P25547)
   Michael J. Sheehan (P58585)
   Attorneys for Plaintiff
   450 West Fourth Street
   Royal Oak, Michigan 48067
   (248) 645-1483
   reg@h2law.com
   mjs@h2law.com

Dated:  October 23, 2017

4821-0116-1792, v. 5