UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MASSACHUSETTS BAY INSURANCE
COMPANY,                                                    Case No. 17-13450

        Plaintiff,                              Honorable Nancy G. Edmunds

v.

THE CINCINNATI INSURANCE COMPANY,

        Defendant.

_____/

## OPINION AND ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13]

This matter is before the Court on Plaintiff Massachusetts Bay Insurance Company's Motion for Summary Judgment. (Docket 13.) Defendant The Cincinnati Insurance Company filed a response and Plaintiff filed a Reply. (Dkts. 15, 17.) Plaintiff brings a single claim for equitable subrogation against Defendant. (Compl., dkt. 1.) The Court heard this motion on May 23, 2018.

### I.    Background & Facts

The parties are insurers of contractors on a construction site where an injury occurred. Mondrian Holdings, LLC, or its affiliate Mondrian Properties, LLC, ("Mondrian") was the general contractor. (Compl. ¶ 10.) Mondrian was covered by Defendant's insurance policy number ENP 021 05 33 (the "Cincinnati Policy") for the period from September 19, 2013, through September 19, 2016. (Pl.'s Mot. Summary J. Ex. D, dkt. 13-5.) Mondrian was also covered by a policy issued by Solid Surfaces Unlimited, Inc. ("Solid Surfaces"). Solid

Surfaces was a subcontractor of Mondrian on the construction. (Compl. ¶ 11.) Pursuant to its subcontract agreement with Mondrian, Solid Surfaces agreed to include Mondrian as an "additional insured" on its liability insurance policy. (Subcontractor Agreement, Def.'s Resp. Ex. 2, dkt. 15-3.) Plaintiff issued a commercial general liability insurance policy to Solid Surfaces, policy number ZDB-8699818 11 for the period from May 1, 2013 through May 1, 2014 (the "Hanover Policy"). (Pl.'s Mot. Ex. E, dkt. 13-6.)

On or about November 25, 2013, Kerry Ledford, employed by Ledford Contracting, Inc., was assigned to the construction site at premises located in Troy, Michigan (the "Job Site"). (Pl.'s Mot. Ex. C, ¶ 5; Responses to Interrogatories 1-3, Def.'s Resp. Ex. 9, dkt. 15-10.) Ledford is a granite installer who worked as a subcontractor for Solid Surfaces. (Kerry Ledford Dep. 29, 33, 46, 49-50, Def.'s Resp. Ex. 1, dkt. 15-2.) Ledford was injured at the Job Site in November 2013 when he was carrying a piece of backsplash into the house and fell.[1] (Ledford Dep. 18, 48.) At the time he fell he was using wood stairs that led into the house from the garage. (Ledford Dep. 18, 48.) It was Mondrian Holdings' supervisor's responsibility to install or inspect and secure the steps on the job. (Dep. Richard Remmert, 28-29, Pl.'s Mot. Ex. A, dkt. 13-2.) On September 15, 2014, Ledford filed suit against Mondrian Holdings, LLC, in Oakland County Circuit Court (the "Underlying Lawsuit"), alleging negligent acts, including "[f]ailing to properly build, construct, install or secure the step or stairs, so that it could be properly usable without breaking, collapsing, falling or becoming insecure." (Compl. and Jury Demand, Case No. 14-142921, Oakland County Circuit Court, Pl.'s Mot. Ex. C, dkt. 13-4.) Ledford also named one "John Doe" as a

---

[1] There is no dispute that both policies were in effect for the period of time in which the injury occurred.

defendant, further identified as "the person or business entity who did build, install, provide or otherwise create the steps or stairs leading into the house from the garage at the construction site of the premises located at 3201 McClure, City of Troy, State of Michigan." (*Id.* at ¶ 7.)

Mondrian tendered defense to Defendant Cincinnati to defend it in the state court suit. Cincinnati filed an answer, but in a letter dated December 11, 2014, Cincinnati's attorney demanded that Plaintiff Massachusetts Bay Insurance Company (Massachusetts) and/or its subsidiaries, assume Mondrian's defense and indemnify it, as well as reimburse defense-related expenses to date. (Daniels Letter, Dec. 11, 2014, Pl.'s Mot. Summary J., Ex. F, dkt. 13-7.)

In light of Cincinnati's position that it was Massachusetts' duty to defend, and in light of the unknown "John Doe" defendant, Massachusetts agreed to defend Mondrian in the state court suit as an additional insured, but "under a full and complete reservation of rights" and "subject to the terms and conditions" of the policy. (Massachusetts/Hanover letter, Dec. 19, 2014, Pl.'s Mot. Summary J. Ex. G, dkt. 13-8.) In Plaintiff's motion for summary judgment, Plaintiff alleges that it ultimately "settled the claims against Mondrian in the Underlying Action for a settlement payment of $230,000 in or about October, 2015." (Pl.'s Mot. Summary J. 7, dkt. 13.) Plaintiff alleges that Defendant "refused to participate in settlement negotiations and refused to contribute or reimburse Plaintiff for the cost of defending and settling the claims against Mondrian." (Pl.'s Mot. Summary J. 7, dkt. 13.)

Plaintiff made additional attempts to tender defense and indemnity to Defendant, including via email and letters dated September 29, 2015, and April 13, 2016, after learning through the pleadings and discovery that Mondrian alone installed the steps involved in the

3

incident. (Hanover/Massachusetts Letter, Sept. 29, 2015, Pl.'s Mot. Summary J. Exs. H, K, dkts. 13-9, -12; Letter, April 13, 2016, *Id.* at Ex. M, dkt. 13-14; *see also Id.* at Exs. L, N, and O.) Plaintiff alleges that it provided supporting documentation at Defendant's request. (Pawlowski Letter, Oct. 14, 2015, Pl.'s Mot. Summary J. Ex. L, dkt. 13-13; Email Correspondence, Pl.'s Mot. Summary J., Exs. N, O, dkts. 13-15, -16.) Plaintiff alleges that at the time of filing its motion for summary judgment, Defendant still had not responded "in any meaningful fashion" to its requests for reimbursement. (Pl.'s Mot. Summary J. at 8, dkt. 13.)

Plaintiff's position is that its policy made Mondrian an additional insured only with respect to Solid Surfaces' work. Because the losses alleged in the lawsuit resulted from the sole negligence of Mondrian, as supported by discovery, Mondrian was not an "additional insured" pursuant to the Hanover Policy and Mondrian's only available coverage for the underlying incident would have been Defendant Cincinnati's policy. Plaintiff alleges that the plain terms of the Cincinnati Policy required Defendant to defend and indemnify Mondrian in the state court lawsuit.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Rule 56 also provides that

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

## III.  Analysis

### A.  Whether There Was Coverage Under Plaintiff's Policy, The Hanover Policy, For the Loss At Issue

Plaintiff's motion for summary judgment, while raising several issues, relies nearly entirely on establishing two things: (1) that Mondrian's sole negligence caused Ledford's injury and (2) that Mondrian's sole negligence precludes coverage as an additional insured under the Hanover (Plaintiff's) Policy. Plaintiff does not establish that coverage under the Hanover Policy is precluded even if Mondrian were solely negligent.

#### 1.  Whether Plaintiff's Policy, The Hanover Policy, Provides Coverage For Ledford's Accident

Pursuant to the subcontractor agreement, Solid Surfaces was required to "carry commercial general liability insurance . . . naming the Contractor and the Owner as Additional Insured's hereunder" and "[a]dditional insured coverage shall apply as primary insurance with respect to any other insurance afforded to Owner and Contractor [Mondrian Holdings and its Subsidiaries]." (Subcontractor Agreement, Def.'s Resp. Ex. 2, dkt. 15-3.) The Hanover Policy provides coverage to Mondrian as an additional insured:

1. Additional Insured by Contract, Agreement or Permit
   Under Section II - Who Is An insured, Paragraph 5. is added as follows:
   5.a.  Any person or organization with whom you agreed, because of a written contract, written agreement or permit to provide insurance, is an insured, but only with respect to:
   (1) "Your work" for the additional insured(s) at the location designated in the contract, agreement or permit; . . .

(Hanover Policy, Comm'l General Liability Special Broadening Endorsement, pg. 1 of 6, dkt. 15-5.) The Hanover Policy defines "your work" as follows:

22. "Your Work"
   a. Means:
      (1) Work or operations performed by you or on your behalf; and
      (2) Materials, parts or equipment furnished in connection with such work or operations.
   b. Includes:
      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
      (2) The providing of or failure to provide warnings or instructions.

(*Id.* at Section V, dkt. 13-6, pg. 147 of 205.)

Plaintiff argues that Ledford's injury arose from the sole negligence of Mondrian in installing the steps, and not from any actions or work performed by Solid Surfaces. (Pl.'s Mot. Summary J. 12, dkt. 13.) Plaintiff reads "Your Work" too narrowly.

*Walgreen Co. v RDC Enterprises, L.L.C.*, 2011 WL 3689152 (Mich. Ct. App. Aug. 23, 2011), on which Defendant relies, is instructive. In an unpublished opinion, the Michigan Court of Appeals found that "the trial court construed the phrase 'with respect to liability resulting from . . . your work for that protected person by or for you' too narrowly . . . " *Id.* at *4.

We conclude that the phrase 'resulting from' only affects the level of the causation necessary to find coverage. It is not a fault-based limitation on coverage. . . . [T]he policy language is indicative of factual causation and, therefore, would not preclude coverage from Walgreen's own negligence.

Because the claim in the Saffaleo negligence case is that an employee of Icon's subcontractor fell off a catwalk while doing signage work for Icon's subcontractor, Walgreen would be entitled to coverage under the additional-

insured endorsement in the insurance policy. . . . It is sufficient that Saffaleo was doing Icon's work at the time of this fall.

*Id.* at \*5 (internal citations omitted); *see also Transportation Ins. Co. v. Citizens Ins. Co. of Am.*, 2010 WL 3245418, at \*6 (E.D. Mich. Aug. 17, 2010) (Cook, J.) (The court found that absent the agreement between the general contractor and the masonry subcontractor, the subcontractor's employee "would not have been authorized to work" on the project where he was ultimately injured. "Thus, . . there is a sufficient and logical association between [the employee's injury] and the performance of masonry services under the . . . contract."). The *Walgreen's* case was ultimately resolved on other issues.

Ledford was engaged in work on behalf of Solid Surfaces when he was injured. He was carrying a back splash into the home at the job site when he fell. If not performing work on behalf of Solid Surfaces, Ledford would not have been on the job site and would not have been injured on the steps. A reading of "work" pursuant to *Walgreen's* supports a finding that coverage existed under the Hanover Policy where Ledford was performing work on behalf of Solid Surfaces at the time of his injury. The question remains whether the injury resulted from the sole negligence of the additional insured, Mondrian, and, if so, whether coverage under the Hanover Policy is precluded.

### 2. Whether Mondrian Was Solely Negligent

The underlying complaint alleges negligence against only Mondrian and a "John Doe" who built or installed the steps. (Underlying Lawsuit Compl. ¶¶ 2, 3, 6, 7.) Negligence is not alleged against anyone else. Plaintiff argues that there is no genuine issue of material fact that Mondrian's sole negligence caused Ledford's injury. (Pl.'s Mot. Summary J. 10,

dkt. 13.) Plaintiff cites the depositions of Mondrian's project manager, Richard Remmert, and former employee and superintendent on the project, Henry Vitella. (Remmert Dep. 6, 9, Def.'s Resp. Ex. 6, dkt. 15-7.) Remmert testified that the steps at issue were purchased by his superintendent, who assembled them himself. (Remmert Dep. 16, 18.) He knew this because this was Vitella's "procedure of building those steps." (Remmert Dep. 16.) When shown a picture of the stairs, Remmert testified that they were "not installed" meaning they were not attached to part of the house. (Remmert Dep. 22-23.) He also testified that the day of the incident, he saw steps that were properly installed. (Remmert Dep. 23.) He was told by a co-worker that the co-worker fixed them up and there appeared to be nothing wrong with them. (Remmert Dep. 28, 29.)

Henry Vitella testified that he does not remember the steps in place in the garage at the Job Site. (Henry Vitella Dep. 21, 48, Def.'s Resp. Ex. 7, dkt. 15-8.) He did not recall if he specifically installed the steps at the project at issue. (Vitella Dep., 21, 37, 48.) Plaintiff points out that in the underlying lawsuit, Mondrian never made any cross-claims, nor did it deny that it was solely responsible for building and installing the steps. Mondrian's facilitation statement did not suggest anyone else was responsible for installation of the steps or otherwise contributed to Ledford's injury. (Mondrian's Facilitation Summary, Pl.'s Mot. Summary J. Ex. P, dkt. 13-17.) Further, Plaintiff alleges that photographs of the steps immediately following the fall indicate that they were improperly installed. (Remmert Dep. 22-23, Ex. A; Vitella Dep. 27.)

Defendant argues that Plaintiff has failed to establish that Mondrian was solely negligent. Defendant points to testimony that the stairs did not come apart, but instead

detached from the wall, and Defendant alleges that Plaintiff's facilitation statement provides that Ledford's son threw away the screws that originally fastened the stairs in place, and reinstalled them. Defendant argues that this spoliation of evidence prevents a determination of defective installation. Further, Defendant points to conflicting testimony as to who installed the stairs. Remmert testified that the superintendent would have done it; Vitella does not recall installing them, and does not recall whether they were in place at the time he left employment with Mondrian. (Vitella Dep. 21, 37.) Vitella testified that his practice was to install steps with 3-inch screws, and screw it into the bond, behind the drywall. (Vitella Dep. 17-18.) After installing the steps he tests them. (Vitella Dep. 34.) In interrogatories, Mondrian was asked who was responsible for the installation of the steps and responded that "This information is not known to Defendant." (Def.'s Resp. Ex. 9, dkt. 15-10.) Defendant also filed a Notice of Fault of Non-Party(ies). (Notice of Fault of Non-Party(ies), Feb. 27, 2015, Def.'s Resp. Ex. 8, dkt. 15-9.) Finally, Defendant points out that no trier of fact has made a finding of negligence: The underlying suit was resolved by settlement; Plaintiff has failed to prove the elements of negligence; and no discovery has been performed in the underlying case as to the other trades on site and their potential role. The Court finds that Defendant has raised a question of fact as to whether Mondrian was solely negligent and discovery is not yet closed, but for purposes of the remainder of this opinion and order, the Court will assume Mondrian was solely negligent.

### 3. Whether Sole Negligence Precludes Coverage

Plaintiff relies on *Toledo Edison Co. v. ABC Supply Co.*, 46 Fed. Appx. 757 (Sixth Cir. Aug. 28, 2002), to argue that there is no coverage as an additional insured for a general

contractor's sole negligence.  In *Toledo Edison*, a roofing worker "was seriously injured when the boom of a roofing delivery truck he was in contacted a Toledo Edison high voltage power line." *Id.* at *759. The injured worker brought a suit against both Toledo Edison, alleging negligence as to the maintenance, construction and inspection of the power line, and against Asplundh, with whom Toledo Edison had contracted to trim the trees. *Id.* The worker settled with Asplundh, and the case against Toledo Edison went to trial, where the worker obtained a jury verdict in his favor "based on Toledo Edison's own negligence." *Id.*

Toledo Edison then brought suit against several defendants, including Asplundh and its insurer, seeking indemnification and costs for defending the underlying suit. *Id.* The court examined the additional insured provision of the policy, and concluded that it provided that "Toledo Edison is an additional insured only for liability 'arising out of' operations of Asplundh."[2] *Id.* at 762. The court noted that "[w]hen considering similar 'arising out of' language, Ohio courts have held that such provisions do not provide indemnification for the additional insured's own negligence." *Id.* (citations omitted). The Sixth Circuit concluded that "Asplundh's insurance policy covered only claims arising out of Asplundh's performance of the tree-trimming contract, and did not expressly provide for coverage of

---

[2]    The additional insured provision of the policy at issue in *Toledo Edison* was as follows:

> It is agreed that the persons insured provision of the policy is amended to include as an additional insured any person or  organization, public entity or governmental entity with respect to liability arising out of operations conducted by or on behalf of the named insured, but only to the extent, with regard to coverages, and limits of liability . . . as the named insured has agreed in writing prior to loss to provide insurance for such interest.

*Id. at 762.*

claims stemming from Toledo Edison's own negligence." *Id.* at 763. The court concluded that "the jury verdict found Toledo Edison liable for its own negligence. There is no evidence that the verdict was based in any way on Asplundh's negligent performance of its tree-trimming operations. The terms of the policy simply do not provide coverage for Toledo Edison in this situation." *Id.*

Defendant argues that the *Toledo* case "evaluates 'confused' Ohio law on the topic and has no precedential value in this case." (Def.'s Resp. 8, dkt. 15.) The Court agrees with Defendant that *Toledo* lacks precedential value,[3] and finds the facts distinguishable from the instant case. *Toledo* does not address whether the parties could have allocated risk between themselves via an insurance contract. Further, there was a finding of negligence on the part of Toledo Edison with no evidence that the "verdict was based in any way on Asplundh's negligent performance of the tree trimming contract." *Toledo*, 46 Fed. Appx. at 763. Finally, in the case at bar, Ledford's injury occurred during work being performed for Plaintiff's insured. The other cases cited by Plaintiff for a similar premise are distinguishable, and they not from the Sixth Circuit nor based on Michigan law. *See e.g., Northeast Utils. Serv. Co. v. American Elec. Testing*, 60 Conn. L. Rptr. 664 (2015); *Worth Const. Co. v. Admiral Ins. Co.*, 10 N.Y.3d 411 (2008).

Plaintiff also argues, without providing legal authority, that the terms of the Hanover Policy "exclude the possibility of Hanover being entirely responsible for a loss caused by

---

[3] It is based on Ohio law and the Sixth Circuit admits that "[w]hether two parties to a contract covered by § 2305.31 are permitted to allocate risk through insurance policies (rather than indemnification provisions) such that a subcontractor/additional insured is required to insure a contractor/additional insured for the contractor's own negligence in connection with the contract is a question on which the Ohio law is confused." *Id.* at 763.

the sole negligence of its Additional Insured, Mondrian." (Pl.'s Mot. 15, dkt. 13.) Plaintiff relies on Section IV, Commercial General Liability (CGL) Conditions, which provides: "This insurance is primary to other insurance that is available to the Additional Insured as a Named Insured. We will not seek contribution from any other insurance available to the Additional Insured [Mondrian] except . . . i. For the sole negligence of the Additional Insured." (Pl.'s Mot. Exhibit E, Hanover Policy, CGL Special Broadening Endorsement 4.a.1, addition to Section IV, CGL Conditions.) A plain reading of the provision suggests Plaintiff may "seek" contribution, yet does not exclude Hanover's coverage for "sole negligence" of the Additional Insured. It is worth noting that the additional insured provision of one of the policies at issue in *Walgreen* excluded coverage for an additional insured's own negligence. *See Walgreen Co.*, 2011 WL 3689152, at *9 ("we are satisfied the court reached the right result in finding no coverage available to Walgreen. . . . the additional-insured endorsement clearly excludes coverage for an additional insured's own negligence.")

Finally, Plaintiff argues that "under Michigan law, there is no liability under the underlying subcontract or by extension the Hanover policy to indemnify Mondrian against its sole negligence," citing Mich. Comp. Laws § 691.991. (Pl.'s Mot. Summary J. 16, dkt. 13.) Mich. Comp. Law § 691.991 provides

> In a contract for the . . . construction, . . . of a building, . . . , a provision purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable.

Mich. Comp. Laws § 691.991(1). Plaintiff has not identified a provision that purports to indemnify for the contractor's sole negligence and has not briefed this issue aside from referencing the statute. The indemnification provision in the Subcontractor Agreement between Mondrian Holdings and its Subsidiaries, and Solid Surfaces Unlimited, Inc., the insureds of Defendant and Plaintiff, respectively, specifically provides, "Subcontractor shall not be obligated to indemnify and defend Contractor or Owner for claims found to be due to the sole negligence or willful misconduct of Indemnified Parties." (Subcontractor Agreement, Def.'s Resp. Ex. 2, dkt. 15-3.). Defendant calls this argument a "red herring" because Plaintiff agreed to defend Mondrian on Mondrian's status as an additional insured, not under the contractual indemnification agreement, and the statute has no bearing on the insurance status of the indemnitee. Neither party has provided case law to support its position on Mich. Comp. Law § 691.991.

The Court does not find instructive case law addressing the application of Mich. Comp. Law § 691.991 to an allocation of risk between parties through an insurance policy. The Hanover Policy covers the incident at issue, and there is no basis on which to find that sole negligence of Mondrian excludes coverage as an additional insured under the Hanover Policy for this incident.

### B.  Whether The Cincinnati Policy Provides Coverage

Plaintiff's argument that the Cincinnati Policy is the only policy with coverage for this incident is based on its argument that the loss alleged in the underlying lawsuit was caused by the sole negligence of Mondrian, thus precluding coverage of Mondrian as an additional insured under the Hanover Policy. Even if the Court assumes for purposes of this motion

that there is no genuine issue of material fact that Mondrian was solely negligent, the Court

finds that Plaintiff has not shown that coverage is precluded by sole negligence. Therefore,

the Cincinnati Policy is not the only policy offering coverage to Mondrian.

The Cincinnati Policy includes a Commercial General Liability ("CGL") Coverage Form

that provides in part,

> We will pay those sums that the insured becomes legally obligated to pay as
> damages because of 'bodily injury' or 'property damage' to which this insurance
> applies. We will have the right and duty to defend the insured against any 'suit'
> seeking those damages. However, we will have no duty to defend the insured
> against any 'suit' seeking damages for 'bodily injury' or 'property damage' to
> which this insurance does not apply. We may, at our discretion, investigate any
> 'occurrence' and settle any claim or 'suit' that may result.

 (Cincinnati Policy, Commercial General Liability Coverage Form, Pg. 1 of 22, dkt. 13-5.)

Plaintiff alleges, and Defendant does not dispute, that the Cincinnati Policy was in effect

for the time of the incident and covered the territory including the Job Site. (Pl.'s Mot.

Summary J. 9.) Plaintiff correctly points out that Defendant does not dispute Plaintiff's

allegation that the Cincinnati Policy provided coverage for the loss at issue; the parties do

not disagree that the Cincinnati Commercial General Liability Coverage would cover the

underlying injury at issue in the absence of the Hanover Policy. Defendant argues instead

that the Hanover Policy provides coverage to Mondrian for Ledford's injuries. (Def.'s Resp.

8, dkt. 15.)

### C. Whether The Cincinnati Policy's "Other Insurance" Clause Leaves The Hanover Policy As the Primary Policy For This Loss?

The Cincinnati Policy contains an "other insurance" provision that provides

> If other valid and collectible insurance is available to the insured for a loss we cover under COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY . . . our obligations are limited as follows:
>
> . . .
>
>> (b) Excess Insurance
>>
>> This insurance is excess over:
>>
>> . . .
>>
>> (2) Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the insured has been added as an additional insured by attachment of an endorsement.
>>
>> . . .
>>
>> When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
>>
>> (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; . . . .

(Cincinnati Policy, Commercial General Liability Coverage Form, pg. 14-15 of 22, Pl.'s Mot. Summary J. Ex. D, dkt. 13-5.) Again, Plaintiff's argument that the Cincinnati Policy's "other insurance" provision does not apply is based on the Court making a finding that the Hanover Policy does not provide coverage because the loss arises from the additional insured's sole negligence. That is not this Court's finding and the Court must now consider the Cincinnati Policy's Other Insurance clause in the context of the Hanover Policy coverage.

Hanover's "Other Insureds" provision provides as follows with respect to additional insureds:

> If you agree in a written contract, written agreement or permit that the insurance provided to any person or organization included as an Additional Insured under **Section II -- Who is An Insured**, is primary and non-contributory, the following applies:

If other valid and collectible insurance is available to the Additional Insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**1. Primary Insurance**

This insurance is primary to other insurance that is available to the Additional Insured which covers the Additional Insured as a Named Insured. We will not seek contribution from any other insurance available to the Additional Insured except:

i. For the sole negligence of the Additional Insured;

ii. when the Additional Insured is an Additional Insured under another primary liability policy ; or

iii. when **2.** below applies.

. . .

**3. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

(Hanover Policy, CGL Special Broadening Endorsement 4.a.1, addition to Section IV, CGL Conditions, Pl.'s Mot., Ex. E, dkt. 13-6, pg. 130 of 205.) The provision includes the requirement that the agreement provide that the insurance is "primary and non-contributory." The Subcontractor Agreement between the parties requires that "[a]dditional insured coverage shall apply as primary insurance with respect to any other insurance afforded to Owner and Contractor." (Subcontractor Agr., dkt. 15-3.) Plaintiff makes no argument that the Hanover Policy is not primary as to additional insureds.  Even with a determination that the Hanover Policy is primary, under sub-part 4.a.1, cited above, the provision allows Plaintiff to seek contribution "[f]or the sole negligence of the Additional

17

Insured." (Hanover Policy, CGL Special Broadening Endorsement 4.a.1, addition to Section IV, CGL Conditions, Pl.'s Mot., Ex. E, dkt. 13-6, pg. 130 of 205; *see also* Letter from A. Fries, Hanover (April 13, 2016), Pl.'s Mot. Ex. M, dkt. 13-14.) Plaintiff has not shown nor made an argument that the Hanover Policy is "excess insurance" in this matter nor does the policy support such a finding. The provisions under which the Hanover Policy would be "excess insurance" do not apply to the instant case. (Hanover Policy, CGL Special Broadening Endorsement 4.a.1, addition to Section IV, CGL Conditions, Pl.'s Mot., Ex. E, dkt. 13-6, pg. 130 of 205.)

"In reconciling competing 'other insurance' clauses, the courts of this state will generally follow the majority rule and give effect to the meaning and intent of the policy language." *Liberty Mutual Ins. Co., v. Allstate Ins. Co.*, 1997 WL 33354716, at *1 (Mich. Ct. App. Feb. 11, 1997) (citing *St. Paul Fire & Marine Ins. Co. v. American Home Assurance Co.*, 514 N.W.2d 113 (Mich. 1994)). Defendant's Cincinnati Policy contains an "excess insurance" clause, one of the three general categories of "other insurance clauses" recognized by Michigan case law. An "excess clause" "limits the insurer's liability to the amount of loss in excess of the coverage provided by the other insurance." *Liberty Mutual Ins. Co.*, 1997 WL 33354716, at *1 (citing *St. Paul Fire & Marine Ins. Co.*, 514 N.W.2d 113). The Hanover Policy's "method of sharing" provision is akin to a "pro-rata clause, which purports to limit the insurer's liability to a proportionate percentage of all insurance covering the event." *Liberty Mutual Ins. Co.*, 1997 WL 33354716, at *1. The Court cannot find that there are competing "excess insurance clauses" that would result in an apportioning of liability. *See Liberty Mutual Ins. Co. v. Allstate Ins. Co.*, 1997 WL 33354716, at *1. The

Court relies on the Hanover Policy allowance of contribution for sole negligence in finding, for the reasons below, that Plaintiff is entitled to equitable contribution and subrogation.

### D. Whether Plaintiff Is Entitled To Reimbursement Of The Amount It Paid To Defend And Settle The Underlying Litigation

Plaintiff argues that it is entitled to equitable subrogation under Michigan law and should be reimbursed by Defendant Cincinnati for the full cost of defending and settling Ledford's underlying lawsuit.

> Equitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other. It is well-established that the subrogee acquires no greater rights than those possessed by the subrogor, and that the subrogree may not be a "mere volunteer."

*Hartford Accident & Indemnity Co. v. Used Car Factory, Inc.*, 600 N.W.2d 630, 632 (Mich. 1999). Further, "[c]ontribution is an equitable remedy based on principles of natural justice." *Tkachik v. Mandeville*, 790 N.W.2d 260, 265 (Mich. 2010) (citation omitted).

> The general rule of contribution is that one who is compelled to pay or satisfy the whole *or to bear more than his aliquot share of the common burden or obligation*, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares.

*Id.* at 266 ("the first question to be addressed is whether there is an adequate legal remedy that precludes this Court from providing equitable relief," *id.* at 268) (citing *Caldwell v. Fox*, 231 N.W.2d 46 (Mich. 1975)(emphasis added)); *see also Secura Ins. Co. v. Farm Bureau Ins. Co. of Michigan*, 2011 WL 6464178, at *6 (Mich. Ct. App. Dec. 22, 2011) (citing *Tkachik*).

19

Plaintiff argues that due to the naming of a "John Doe" in the underlying lawsuit, it was initially unclear what person or entity installed the steps at issue. Mondrian tendered defense to Cincinnati, which declined to participate, so Plaintiff defended so as not to prejudice the rights of Mondrian as a potential insured. Plaintiff corresponded with Cincinnati throughout the defense, seeking participation and contribution. Plaintiff argues that, like the insurer in *Hartford*, it has a right of equitable subrogation against Cincinnati to be reimbursed the full cost of defending and settling the lawsuit.

In *Hartford*, the plaintiffs were the employer of injured employee Eugene Bunt and the employer's insurer. *See Hartford Acc. & Indem. Co.*, 600 N.W.2d at 631. Bunt was injured when Michael Klecha drove a car directly into the path of a tractor-trailer owned by the plaintiff and driven by Bunt. *Id.* Klecha had purchased the car days before from the defendant, Used Car Factory (UCF). *Id.* Believing that Klecha was the owner of the car he was driving and an uninsured motorist, Bunt filed a claim for uninsured motorist benefits under the vehicle policy Hartford had issued to Bunt's employer. *Id.* After Bunt and Hartford engaged in arbitration, with Bunt being awarded $680,000, Hartford and Bunt's employer sued UCF, arguing in their second amended complaint that UCF had retained title to the car, and was "liable for the negligent operation of the vehicle under the owner's civil liability section of the Motor Vehicle Code." *Id.* at 632. The circuit court ruled that title had not passed from UCF to Klecha and that UCF remained the owner of the vehicle. *Id.* The circuit court also granted summary judgment in favor of UCF, holding that the plaintiffs "were not entitled under the doctrine of equitable subrogation to reimbursement of the various sums they had paid to Mr. Bunt," which was affirmed by the court of appeals. *Id.*

The Michigan Supreme Court found that the plaintiffs were entitled to pursue a claim of equitable subrogation. *Id.* at 634. The court noted that "in order for [the plaintiffs] to establish a cause of action against [UCF], they must show a basis for liability, and they must show connections between Mr. Bunt and them, and between Mr. Klecha and [UCF]." *Id.* at 633. The court accepted "the allegation that the accident was caused by the negligence of Mr. Klecha. Thus there is a basis upon which liability can be found." *Id.* The court also noted that "[w]hile TUCF continues to contest its ownership status, it is presently sufficient to note that Hartford and Total adequately alleged a theory under which TUCF was the owner. On that basis, TUCF would have been liable to Mr. Bunt." *Id.* at 634. Finally, the plaintiffs needed to "show a basis on which the cause of action can move from Mr. Bunt to them." *Id.* "A non-volunteer who is required to pay a debt that is primarily owed by a third person is equitably subrogated to the rights of the subrogee." *Id.* at 634. The plaintiffs had paid "significant sums to Mr. Bunt on the premise that Mr. Klecha was an uninsured motorist," an "understandable conclusion," and the plaintiffs have "no remedy at law." *Id.*

Here, Plaintiff has demonstrated a theory upon which Mondrian can be found liable: that Ledford's injury was caused by Mondrian's sole negligence. Next, there is a connection between Mondrian and its insurer, Defendant Cincinnati. Without coverage by Plaintiff, Cincinnati would have provided coverage to Mondrian for Ledford's injury. Finally, Plaintiff provided coverage to Mondrian when the John Doe defendant remained unidentified and before Plaintiff had a basis to adopt its position that Mondrian was solely negligent and

therefore cannot be covered as an additional insured. Under this set of circumstances, equitable subrogation remains as a claim by Plaintiff.

### E.  Whether Defendant Breached Its Obligation To Indemnify and Defend The Insured

Again, Plaintiff's argument that Defendant breached its obligation to indemnify and defend Mondrian relies on findings that (1) Mondrian's sole negligence caused Ledford's injury and (2) Mondrian's sole negligence precludes coverage as an additional insured under the Hanover (Plaintiff's) Policy. Because the Court does not find coverage under the Hanover Policy precluded by sole negligence, it does not find that Defendant breached an obligation to indemnify and/or defend the insured.

## IV.  Conclusion

For the reasons set forth above, the Court DENIES in part and GRANTS in part Plaintiff's Motion for Summary Judgment as follows:

Mondrian's sole negligence as a cause of Ledford's injury would not preclude coverage under the Hanover (Plaintiff's) Policy; and

Plaintiff may seek equitable contribution and subrogation from Defendant.

**SO ORDERED.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  June 19, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 19, 2018, by electronic and/or ordinary mail.

<u>s/Lisa Bartlett</u>
Case Manager